## IN THE MATTER OF THE BINDING ARBITRATION OF:

### REVOLUTION MARINE & SPORTS CENTER, LLC; CARTAR BULKHEADING, LLC, NICHOLAS TARSIA and ROBERT CRYSTAL

vs

### ANTHONY CARLO, DANIEL CARLO, KAREN CARLO, HELEN COOPER, CARDAN, INC; REVOLUTION MARINE CENTER; KAREN CARLO, GARY CLARK

vs

### GEORGE LANDI

This matter arises out of claims and counterclaims by partners and employees of an LLC, Revolution Marine and Sports Center, Tuckerton. The case has voluntarily been placed by the parties into binding arbitration, an alternate dispute resolution forum. The matter began as a Verified Complaint, filed in the Superior Court of New Jersey, Chancery Division, Ocean County, Docket Number: C-284-08 on December 5, 2008 by Revolution Marine and Sports Center, LLC, and Nicholas Tarsia and Robert Crystal against Daniel M. Carlo, Karen Carlo, Anthony Carlo and Helen Cooper. An Answer, Counterclaim and Third Party Complaint against George Landi, an employee of Revolution Marine was later filed.

An Amended Verified Complaint was filed adding Cartar Bulkheading, LLC as a plaintiff and naming Cardan Inc. and Gary Clark as defendants. An Answer on behalf of Dan Carlo, Anthony Carlo, Karen Carlo and Lauren Carlo was filed to the Second Amended Complaint. An Answer to the Amended Verified Complaint was filed on behalf of Dan Carlo, Anthony Carlo, Karen Carlo and Cardan, Inc.

1



EXHIBIT

P-1

The defendant, Helen Cooper, filed an Answer through her own counsel, Mr. Steven Secare, Esq.   Based on a stipulation regarding her proffered testimony at the beginning of the arbitration hearing, she was dismissed as a defendant. The third party, Landi, was represented by counsel for the plaintiffs but failed to appear at the arbitration even though a notice to produce in lieu of a subpoena was properly served by counsel for the defense.   A request for an adverse interest finding was properly filed by counsel for the defendants.

The arbitration hearings were held at the office of Reusille, Mausner, Carotenuto, Barger & Kenny, 365 Broad Street, Red Bank, New Jersey. All witnesses were sworn prior to giving testimony.

Claims against the parties by third parties other than those in the original Verified Complaint, answer thereto and counterclaim and Third Party Complaint have been added by agreement to the issues in this binding arbitration. Those other matters relate to suits by Mercury Marine for monies owed by the partnership; Cash Advance for monies owed; and the wage and hour claim of Mr. Daniel Carlo against Revolution Marine for salary as an employee.

The parties: Robert Crystal; Nicholas Tarsia; Daniel Carlo and Anthony Carlo testified at the arbitration. In addition, Helen Cooper appeared with counsel and filed a Stipulation As To the Facts to which she would have testified. Witnesses, Thomas Frey, CPA, Esq., and Brian Huff were called by the defense. Mr. Frey was called as an expert and testified as to the findings and opinion resulting from his review and compilation of the banking records and general ledger of Revolution Marine. Mr. Huff was called to testify as to his knowledge of

the business and the status of inventory prior and subsequent to December 18, 2008. Counsel for both sides submitted both written and oral openings indicating what each intended to prove.

It was alleged by the plaintiffs that they would prove that Mr. Daniel Carlo was not a member of the LLC and, in fact, had no interest whatsoever. Mr. Carlo was the person who ran the businesxs for the LLC. Further, it is alleged that he had access to the checkbook of the business and took money for his personal benefit and that of his family. Also, the plaintiff's stated they would prove that Mr. Carlo paid over $20,000 from the LLC account for another business in Holgate, New Jersey. The plaintiffs state that even if he were an owner/member same would be unauthorized and, therefore, a breach of the fiduciary duty. If not a member, it would constitute conversion.

In addition, the plaintiffs seek payment of an assigned note from Al Rotelle originally for $50,000.

Issues arise in the case and, of necessity, in the opening as to the wage and hour claim by Mr. Carlo. The plaintiffs, in opening, allege that Mr. Carlo is estopped from claiming that he is a member of the LLC because he filed said claim. I am aware that plaintiffs have opposed his claim for wages saying that he was not an employee. The plaintiffs in opening admit that Anthony Carlo was a member/owner of the LLC but that he breached his fiduciary duty by allowing Daniel Carlo to siphon off money to be used in Holgate. He, himself, is alleged to be a partner in that enterprise. Further, he is alleged to be liable to the partnership for conversion and breach of fiduciary duty.

In opening, the plaintiff's allege that Nicholas Tarsia, Robert Crystal and Daniel Carlo owned Cartar Bulkheading. They allege that they received nothing from Cartar. Reference is made to a plea agreement and plea being entered on August 4, 2009. The plea related to $242,674 in undisclosed income.

The defense, in its opening, sets forth that Daniel Carlo originally thought that he was a partner but became aware this was not correct when this suit was served upon him. It is the position of the defense that the plaintiffs received more money from Revolution than they were entitled to receive. The defense sets forth that the plaintiff, Tarsia, was to be the "money man" and was to establish a line of credit. Tarsia was not expected to participate in the running of the business. The economy was bad in 2008 and the line of credit could not be arranged. The plaintiff, Crystal, was to contribute money and to participate in learning the business by helping to run same. Daniel Carlo was also to run and manage the operations of the business and Anthony Carlo was to assist in view of his past retail experience.

On December 18, 2008 the plaintiffs removed the defendants from both the Holgate location and the Tuckerton location. The defense contends the removal from Tuckerton was contrary to the Order to Show Cause and the removal from Holgate was illegal in that neither plaintiff had an ownership interest in that location. Further, it was alleged that the plaintiffs wrongfully removed all records, wrongfully cashed checks and distributed money, allowed theft of partnership property, took profits without paying obligations and deprived Anthony Carlo of his share of profits. Also, the defense seeks repayment of the

4

money loaned by Daniel Carlo to the LLC. The defense contended that the plaintiffs failed to obtain an accounting of the business pursuant to the Order of the Court and misappropriated property of the partnership for personal use.

The defense alleges that the money owed to Mercury Marine are the responsibility of the plaintiffs in that motors were sold and the money was not paid to Mercury Marine. Those motors in stock were on consignment. Further, it appears that a representative of Mr. Tarsia, stole a Mercury Marine engine and neither Mr. Tarsia nor Mr. Crystal, partners running the business at that time, made effort to recover the motor. It is the defendant's position that Mr. Tarsia and Mr. Crystal are personally responsible for that debt. It is further alleged by the defendant that the monies owed to Cash Advance are the personal responsibility of Mr. Tarsia and Mr. Crystal in view of the fact that no monies were returned to Cash Advance subsequent to the plaintiff's removing the defendants from the premises.

Robert Crystal was the first witness called in the plaintiffs case. He testified that he and Daniel Carlo were best of friends in 2007. He was approached by Daniel Carlo and told that he was buying a marina and he invited Crystal to participate. Mr. Crystal did not know Tarsia at that time. Mr. Reichert was to be involved but had dropped out. When formed, the partnership consisted of the partners: Robert Crystal, Nicholas Tarsia and Anthony Carlo. Daniel Carlo was not to be a partner but would manage the business and his compensation was to be determined later. The shares of the partnership were to be 1/3 to each partner. He claims to have invested about $100,000 through checks and credit

cards. While a great number of copies of checks and statements were produced by the plaintiff, no documentation was produced by the plaintiff relating to this investment.

Mr. Crystal denies signing the Operating Agreement and states that his handwriting does not appear on the document. He testified that he obtained the copy of the Operating Agreement by taking it one evening from Daniel Carlo's desk at Revolution Marine in Tuckerton. However, the Operating Agreement marked P1 in evidence shows that it was faxed from Cambridge Management, Mr. Tarsia's business.

According to Robert Crystal, Daniel Carlo on or about August, 2008 told him of the business opportunity in Holgate and invited him to join for $35,000. He did not have the money and did not join. He states that Daniel Carlo told him that he did not want Nicholas Tarsia to be a partner. Robert Crystal went to Tarsia and told him that Daniel Carlo stated that he was going to get rid of Tarsia in Revolution Marine. He also indicated that Daniel Carlo was going to end Revolution Marine in Tuckerton. Neither he nor Tarsia confronted Daniel Carlo about this. Instead, Robert Crystal began an 'investigation' of the business and reported to Tarsia about statements being made by Daniel Carlo. It should be noted that d0uring this time, and from the beginning of the business, both Robert Crystal and Daniel Carlo had check-writing authority and access to the business records. Neither Robert Crystal nor Nicholas Tarsia advised their partner, Anthony Carlo, of any of this nor did they fire Daniel Carlo, who has always been alleged by the plaintiffs to be an employee.

It is without doubt that during this time and before, the business was not doing well. As a partner, Robert Crystal was asked to contribute more money to the business. No documents were produced demonstrating he invested more money.

Mr. Crystal testified that when he spoke to Nicholas Tarsia regarding Cartar, the other business interest, Mr. Tarsia told him that he never knew that Robert Crystal purchased 10% of that business. No documents were produced by Mr. Crystal or any plaintiff confirming the consideration paid to Cartar for the alleged 10% interest.

In September or October, 2008 Mr. Crystal retained counsel, Mr. John Novak, Esq. The testimony indicates that Novak did not contact Anthony Carlo nor Daniel Carlo prior to the filing of the Verified Complaint. The Complaint was filed on December 5, 2008 and served with the Order to Show Cause on December 18, 2008. The Complaint bears a date of November 20, 2008 when it was apparently signed by Mr. Novak.

While no temporary restraints were Ordered by Judge Buczynski, same were sought in the application and Verified Complaint. While it is not known what representations were made by Mr. Novak to Judge Buczynski, no notice of this application was given to the defendants. This violates R. 4:67-2 of the Rules of Court.

Paragraph 3 of the Verified Complaint is problematic for the plaintiffs. The plaintiffs knew that they had no ownership interest in the Holgate location, and, in fact, aver that Anthony Carlo, "has treated the Holgate operation as his own"

seemingly without accountability to plaintiffs. In fact, it was his own, or was a partnership with Daniel Carlo. Neither plaintiff testified that Anthony Carlo was asked at any time to give an accounting of the Holgate location to either one of them. It just does not appear from the testimony that the issue was ever raised before litigation.

From the sworn testimony of the plaintiffs at the arbitration hearing, the facts contained in the Verified Complaint and sworn to by the plaintiffs are not true. Each plaintiff swore upon his own personal knowledge that the allegations on the Verified Complaint were true. The Complaint alleges that Nicholas Tarsia was the managing member and owned 90% of the business and that Robert Crystal owned 9%. It was alleged that Anthony Carlo only owned 1%. At the arbitration each denied writing any of those percentages on the Operating Agreement. Each testified that Anthony Carlo was an equal partner with them. Indeed, the truck referenced in the Verified Complaint which was purchased from Mr. Al Rotelle was, in fact, used in the business according to the arbitration testimony. That fact was not set forth in the Verified Complaint.

From August through December 18, 2008, Mr. Crystal continued to surreptitiously remove records from the business and to give them to Mr. Novak. His actions raise a question of a breach of his fiduciary obligation to the partnership and to his partner, Anthony Carlo.

On December 18, 2008, the plaintiffs under the alleged authority of the Order signed by Judge Buczynski, employed the police departments of both Tuckerton and Holgate to assist them in removing the defendants from the

8

premise of Tuckerton and restraining the defendants from entering either Tuckerton or Holgate. Under this alleged authority, Mr. Crystal removed records and checks from Holgate in addition to the records from Tuckerton.

The Order of December 5, 2008 is clear on its face that the defendant's were to appear on January 9, 2009 or as soon thereafter as counsel may be heard, to show cause <u>Why a Judgment Should Not Be Entered</u>. The Order does not order relief A through E which follows the above Order to appear on January 9, 2009. How this was interpreted by the police and the plaintiffs to enforce temporary restraints is a mystery.

By Order of January 9, 2009, the return date of the Order to Show Cause, Judge Buczynski ordered that Nicholas Tarsia and Robert Crystal were to run the Tuckerton location and that Anthony Carlo and Daniel Carlo, the Holgate location. Records from Holgate in the possession of Robert Crystal were to be returned and an inspection of the Tuckerton location by Anthony Carlo and Daniel Carlo was ordered. Further, an accounting was ordered to be done with a new court appearance set for February 2, 2009.

No accounting was done.

During the removal of records from Holgate, Mr. Crystal took 2 checks payable to Revolution Marine, one for $8,309.63 and one for $7,057.91 totaling $15,367.54. He negotiated them, depositing into his personal account. He then wrote three checks: (1) a check to himself for $5,000; (2) a check to Nicholas Tarsia for $5,000; and (3) a check to Peter Ouda, Esq. for $5,066.00. He testified that he was aware of two separate accounts: one for Holgate and one for

Tuckerton. Mr. Crystal testified that he took and cashed the checks because the businesses had the same tax i.d. number.

Mr. Crystal testified that Tarsia did not participate in running the business after they took over. He did testify on cross examination that he, the third party defendant, Landi, and Mr. Gloria were running the business. He stated that Gloria stole a lot of equipment and might have taken cash out of the business. On one occasion, Gloria damaged a boat and on another, took a Mercury engine and a generator.  Mr. Landi put goods/inventory on E-bay for sale. This was never done while Daniel Carlo was running the business. He, Crystal, sold a boat to his brother-in-law for $1.00. No cash deposits into the Revolution account were made between December 22, 2008-March 17, 2009. He and Nicholas Tarsia purchased the Promissory Note from Rotelle for a present value of $36,000. But, as payment in full, sold him a Blue Water Boat for $18,000, a severe discount. In running the business, he conducted a buy one-get one free sale. In general, all goods/inventory was sold in a liquidation format, 50% off. Records were either not kept, loosely kept or destroyed. The Mercury marine engines were at the store on a consignment basis. Mr. Crystal claims same were sent back. However, records showing that disposition were not produced. As stated earlier, no audit was done. Because Crystal and Tarsia were managing members and in charge of the business, it was their responsibility to account for those engines and goods. It was their responsibility to protect the LLC's property and to recover what was stolen and to account for the revenue.

Robert Crystal testified further that all information in the Verified Complaint was supplied by him to Mr. Novak. The testimony at the arbitration hearing in many respects directly conflicted with the sworn facts as they appear in the Verified Complaint.

Revolution Marine was abandoned in the early part of 2009. He and Tarsia began Crystal Cove Marina in Tuckerton. Rotelle was invited to join but declined to get involved.

Mr. Crystal also testified regarding his claim that he owns a 10% interest in Cartar. He produced a letter dated October 6, 2008 which was marked as P41. It is clear from the document that it is a letter and not a stock certificate. It is signed by only Daniel Carlo and not by Mr. Tarsia. It is claimed that the interest referred to pre-dated the letter. No other documents, receipts or checks were produced showing either the alleged interest, value of the interest, or investment in Cartar. No testimony by either party confirmed or established the value of Cartar at any time. Mr. Tarsia testified that he was unaware of the ownership interest alleged by Mr. Crystal.

Mr. Tarsia was called by plaintiffs counsel. He testified that a friendship with Daniel Carlo evolved into a business relationship in 2003/2004. He invested $25,000 into Cartar and signed a $60,000 lease. It appeared that Cartar was doing really well and this was confirmed by Daniel Carlo. He received $15,000 to $17,000 from Daniel Carlo at that time. The agreement between Tarsia and Daniel Carlo was verbal. He testified that the agreement called for Daniel Carlo to manage and work in the business. He, Tarsia, was not to do any of the work.

Carlo was to pay all bills and expenses. He denies that Carlo was to use the revenue for his living expenses. They were to split the profit. He did not monitor the business and did not receive any more money from Mr. Carlo.

As to Revolution Marine, Mr. Tarsia testified that Daniel Carlo called him about the property and the lease was negotiated. He thought that everyone would be an equal partner; 25% each. However, as to the Operating Agreement, he admits that the writing is his but denies writing the percentage numbers. He did not know who wrote the percentages.

Mr. Tarsia testified that he contributed $96,000 to the LLC by purchasing two boats as inventory and contributing $8,500. He says that he received $93,000 from the business. He was to have no involvement in running the business. Daniel Carlo was to run the business and have check authority. Carlo was to do whatever was necessary. He did not know what Anthony Carlo's role was to be.

He testified that the business was in operation for about four months when, in July 2008, Robert Crystal told him that Daniel Carlo was opening another marina and was going to ditch Revolution Marine in Tuckerton. He apparently believed Crystal even though he did not know him that well.

Mr. Tarsia in response to questions on cross examination stated that after he and Crystal took over, he bought a boat for $18,000 and took a paddle boat valued at $500, both at severe discounts. He has no idea where the money which was taken in by the business after December 18, 2008 went. He entrusted the operation of the business to Robert Crystal, John Gloria and George Landi.

John Gloria is a friend of Mr. Tarsia. Tarsia wanted him to protect his interests. Gloria and Robert Crystal ran the business. Both Mr. Crystal and Mr. Tarsia testified that Gloria damaged a boat and took a $17,000 engine as well as a generator. Nothing has been done to recover anything taken by Gloria. Tarsia stated that he was aware of Landi selling inventory on E-Bay after December 18, 2008. He testified that he was not aware of any E-Bay sales prior to that time.

Further, he testified that <u>prior</u> to the Order of January 9, 2009, he received about $60,000 from the business. He verified that the boats, as shown in inventory marked Exhibit D3 were at Revolution Marine when he and Crystal took over. He was unaware, before this hearing, that Robert Crystal sold a boat to his brother-in-law for the sum of $1.00. He admitted on cross examination that he did not put any money into the formation of Crystal Cove Marina and that it was set up after the January 9, 2009 Order.

Anthony Carlo was called as a witness by the plaintiff and later by his own counsel.

He testified that up until this lawsuit, he thought he was a 25% owner of Revolution. The other 75% was split equally between Nicholas Tarsia, Robert Crystal and Daniel Carlo. He never saw any documents confirming same.

He believes that Daniel Carlo was the first to hear of the business opportunity. He was told by Daniel Carlo that Nicholas Tarsia would get the money for the business by getting a line of credit. He found out that Nicholas Tarsia did not get the line of credit on the day of the grand opening.

He contributed $32,000 in credit cards and cash for the purchase of inventory. He had prior experience in retail and boating. He worked at the store everyday. He understood that he was to be reimbursed from the line of credit which was never obtained.

He does not remember seeing the Operating Agreement before the lawsuit. When he did see it, he thought it was at odds with his understanding. He doesn't know who drafted the document.

Anthony Carlo testified that the Holgate business was set up to service boats and for winter storage. The Tuckerton facility was a retail store, which sold new boats, parts, engines and fishing equipment. He denies that any money was taken from Tuckerton to fund Holgate. Prior to the actual beginning of the Holgate business, he and Robert Crystal went to the premises together. Robert Crystal was invited to participate but could not come up with the money. Anthony Carlo was adamant that Nicholas Tarsia not be invited to join because he did not get the line of credit or financing that he said that he would get for Tuckerton.

Anthony Carlo stated that he invested $4,000-$5,000 in Holgate and that after it opened, he would split time between both locations. He knew nothing about the same tax i.d. number for both Holgate and Tuckerton.

He testified that at one point, he, Nicholas Tarsia, Daniel Carlo and Robert Crystal met for dinner in Belleville, New Jersey to discuss the business in Tuckerton. Nicholas Tarsia wanted to have a sale at 50%. He was adamantly against it. No resolution was achieved.

The witness was shown P12 in evidence and he denied every seeing the nine checks which were written to Pershing. He did not draw those checks. P13 were checks to Am Ex for interest payments on the credit cards which he used for the inventory. P15 were two checks drawn on the Holgate account and not on the Tuckerton account.

As to Cartar, he testified that he signed for the Kabote Excavator and the truck which is in his name.

Daniel Carlo was called by the plaintiffs in their case and recalled by his counsel in the defendant's counterclaimant's case.

Mr. Carlo testified that, until he was served with the Verified Complaint, he thought he was a 25% owner of the business. While not recalling how much each member was to contribute, he felt that $150,000-$200,000 was needed in total to start the business. He asked Nicholas Tarsia to get involved as he had always been the "money man." He, Anthony Carlo and Robert Crystal were to contribute as well. A Mr. Daniel Reichart was originally to be involved at 25% but did not have the money to contribute and, therefore, dropped out. Reichart did all of the paperwork as Daniel Carlo had never set up an LLC before. He denies signing the Operating Agreement and denies that any of the writing on it is his writing or that of Anthony Carlo. He has no idea how it came about and denies that it accurately reflects the ownership.

Mr. Carlo testified that he worked 80 hours per week and that Anthony Carlo worked and set up the departments at Tuckerton. Robert Crystal was

expected to work and to learn the business but Nicholas Tarsia was not expected to work.

Financing and capital were difficult to find. He used his wife's credit cards to purchase inventory. Anthony Carlo used his own credit cards to buy all kayaks, paddle boats and accessories. A $50,000 loan was obtained from Mr. Al Rotelle. Prior to December 18, 2008, $14,000 had been repaid to Mr. Rotelle. In addition to the above, money was borrowed from "secondary sources" and the interest had to be paid on that debt. Money continually had to be put into the business to keep it running. He withdrew money from his personal Trust account in May, June and July totaling $252,558.10. The business in Holgate loaned $23,000 to the Tuckerton business. He testified that Robert Crystal and Nicholas Tarsia were asked to put in more money but did not do so. He advised them that he was loaning more personal money to the business.

An arrangement was made with Cash Advance for a loan of $24,000 which was to be repaid by a procedure where each credit card purchase would produce a certain amount of money in repayment of the loan. He does not know what, if anything, Robert Crystal and Nicholas Tarsia did with that arrangement after they took over the running of the business.

Several copies of different checks were marked for identification and put into evidence. Checks were written on the Tuckerton account. Notations by Mr. Crystal on the photocopies refer to those checks as being unauthorized. However, Daniel Carlo, who had check writing authority and management authority, explained the issuance of those checks as they related to the business.

Apparently, Mr. Crystal was aware of the loans and the need to continually pay same. The plaintiff moved P23 P24 and P25 into evidence. Each exhibit was a photocopy of a check written to Robert Crystal, each for $9,501.00. He marked each as payment to loan shark. Mr. Carlo testified that he did not have a checking account and that is why the checks were to be cashed by Crystal. He said Crystal charged a fee for doing this but no amount was put forth.

He did admit that the Persia checks were placed into an account that Anthony Carlo owned. He testified that Anthony Carlo had no knowledge of those checks. They were to repay Anthony Carlo for the money that he put into the Tuckerton business.

As to the Exhibit P41, the letter "To Whom it May Concern", the witness testified that it was written at the request of Robert Crystal who needed support for a loan application in Florida.

Mr. Carlo testified that the records, checks and documents were removed from the Holgate premises by Mr. Carlo before he was served with the Order or the Complaint. On December 18, 2008 a third account was opened by Robert Crystal and funds from the previous Tuckerton account and Holgate account were frozen. Robert Crystal cashed $5,000-$6,000 in checks taken from the Holgate premises.

Exhibit D3 and D3A were moved into evidence. The exhibit listed boats and other inventory at Tuckerton on December 18, 2008. The total value was $434,104.26. In addition, D4 was marked into evidence. The exhibit lists direct wire transfers from the business into personal accounts of Nicholas Tarsia and

Robert Crystal. The total of the transfers is $176,599.15. Of that amount, Robert Crystal received $86,154.11 and Nicholas Tarsia received $90,445.00. The witness identified a vendor list for Tuckerton which was marked D9 in evidence. The outstanding balance owed to vendors is in the sum of $98,861.26. The amount owed to cash advance is $23,000. Therefore, the total is in the sum of $121,861.26.

Photos taken by Daniel Carlo were admitted into evidence as D10 through D13. Same demonstrate the condition of the premises and the status of inventory during the permitted inspections. Exhibit D12 is a picture of the store sign showing the "buy 1 get one free" oil sale.

The defendant's counterclaimants called Mr. Thomas G. Fry, CPA, Esq. as an expert witness. He testified as to his review of the General Ledger of Revolution Marine and Sports Center, LLC as of December 31, 2008 and the related balance sheet and profit and loss for the period that ended. From the review, he prepared a compilation. His review concludes that a serious cash flow shortage existed that was primarily funded by Daniel Carlo. The contributions to the business by way of partner investments and loans were: Al Rotelle $36,000; Daniel Carlo $238,500; Nicholas Tarsia $8,500; Robert Crystal $18,220; and a loan from Holgate of $4,500. Mr. Fry testified that a loan would be made from a non member and an investment would be made by a member. He testified further that the compilation does not show purchases of boats or inventory by credit card or cash. Mr. Tarsia's purchase of the two boats in the beginning of the business

18

would not be reflected nor would the use of Anthony Carlo's credit card or those of anyone else.

The defense also called Brian Huff who testified that the store was fully stocked with approximately $150,000-$200,000 in inventory in November, 2008. By the time that Nicholas Tarsia and Robert Crystal set up Crystal Cove Marine, 65%-70% of the inventory was sold or disposed of.

The issue of Cartar as to its ownership and profit owed, if any, to Mr. Tarsia and Mr. Crystal was also part of the binding arbitration.

The transcript of the plea by Daniel Carlo in the U.S. District Court was placed into evidence. Mr. Carlo said he had no partners in his testimony. In his testimony at the arbitration hearing he said that whatever happened was his fault and not Mr. Tarsia's. That is the reason for him not admitting that Mr. Tarsia was a partner. He admitted to $242,764 in undisclosed income as part of his plea. He was ordered to pay federal taxes in the sum of $78,792. Mr. Fry testified that the State of New Jersey will soon require him to pay approximately $20,000 in state taxes in addition to the above.

It should be noted that the transcript was in the possession of Mr. Tarsia and Mr. Crystal for several months and yet no effort was made prior to the hearing to correct same.

## FINDINGS/JUDGMENT

As to Cartar, Mr. Crystal claims a 10% ownership in Cartar.

The burden of proof rests upon Mr. Crystal to prove his interests and the amount paid for same. He introduced P41 in support of his claim. Same is a letter

addressed to "To Whom it May Concern." No evidence was introduced to support the accuracy of the figures set forth therein. No reference was made as to Mr. Tarsia. Mr. Tarsia testified that he did not know of Mr. Crystal having an interest even though, without question, he had a 50% interest since about 2003. The defendant, counterclaimant, Daniel Carlo testified that the letter was prepared at the request of Mr. Crystal to be used in support of a loan application.

I find, based upon the above, that the plaintiff has not met his burden of proof and therefore, Daniel Carlo and Nicholas Tarsia are found to be each 50% owner of Cartar. Mr. Crystal is not entitled to any profit from the Cartar partnership or Cardan partnership.

As to Mr. Tarsia's claim against Daniel Carlo for revenue/profit from Cartar, I find that he is a 50% owner. No proof was put forward as to the value of Cartar either by documents or audits. No revenue other than that documented in the transcript of the U.S. Court plea hearing was submitted. Mr. Tarsia had the burden of proving other revenue. Accordingly, I find that the revenue for Cartar was in the sum of $242,764 with taxes owed to the federal government of $78,792. Mr. Frye, CPA testified as an expert that the State of New Jersey will eventually require the payment to it for state taxes in the sum of approximately $20,000. Therefore, while 50% of the revenue is $121,382, same must be reduced by 50% of the tax liability, $49,396 and by the $17,000 admittedly received by Mr. Tarsia. Mr. Tarsia is therefore entitled to a judgment against Daniel Carlo and Cartar in the sum of $54,986.



I also find that the plaintiffs have not met the burden of showing that Cardan is the continuation of Cartar and therefore no judgment is being entered against Cardan.

## AS TO REVOLUTION AND SPORTS CENTER, TUCKERTON AND REVOLUTION MARINE, HOLGATE

The law in New Jersey is clear that the issue of whether a partnership exists is a question of fact to be determined by the trier of fact. While the defendant/counterclaimant Daniel Carlo thought he was a partner, it is clear from the testimony and the partnership documents that he was not. He must be considered to be an employee only.

By stipulation, the partners in Revolution Marine and Sports Center, Tuckerton, are Nicholas Tarsia, Robert Crystal and Anthony Carlo. Each partner was possessed of a 1/3 interest.

Under the law, partners have a fiduciary duty to each other and to the partnership as a separate entity. The fiduciary duty arises both in the statutes and in caselaw.

I find that Robert Crystal and Nicholas Tarsia acted in violation of their joint and several fiduciary duties to Anthony Carlo as an equal partner and to the partnership itself.

Mr. Crystal's actions in removing documents over months and in retaining counsel long before December 18, 2008 caused material injury to the partnership in the partnership business. It is clear from the records that Mr. Tarsia and Mr. Crystal's actions violated the Order of Judge Buczynski. Those actions constitute

both intentional misconduct, reckless conduct and violate the laws set forth in set Order.

The removal of records and their restraint of Anthony Carlo's presence upon the premises of the Tuckerton business violate the fiduciary obligation owed to him.

The actions against the Holgate location in removing both documents and checks (not written on the Tuckerton account) was a violation of the above duties to Anthony Carlo and were illegal as to the partnership of Anthony Carlo and Daniel Carlo, and Daniel Carlo personally. The removal of $8,309.63 on April 21, 2010 from the account of the Holgate business is not legal under the Order of Judge Buczynski and, at the very least, a continuation of misconduct as to Anthony Carlo. The plaintiffs clearly had no rights to that money as it relates to Daniel Carlo. Said money must be returned and therefore, enter judgment against the plaintiffs and in favor of the defendants/counterclaimants for $8,309.63.

The removal of $7,057.91 from the Tuckerton account is also in violation of the plaintiffs fiduciary obligation. In view of the money having been distributed, I enter judgment against the plaintiffs, Nicholas Tarsia and Robert Crystal on behalf of the partnership as said money was wrongfully distributed. Said actions and misconduct by Nicholas Tarsia and Robert Crystal were also violative of the fiduciary obligation to Anthony Carlo.

As set forth above, Judge Buczynski's Order of December 18, 2008 only compelled the parties to appear on January 9, 2009 to Show Cause Why

Judgment Should Not Be Entered. The plaintiffs wrongfully evicted the defendants and further, wrongfully took money from the partnership by wiring to their personal accounts the sum of $176,599.15. Of that amount, $158,350.00 was clearly taken even before the return of the Order To Show Cause on January 9, 2009.

I enter judgment against the plaintiffs in the amount of $176,599.15 to be returned to Revolution Marine and Sports Center, LLC account. I further enter judgment finding that the taking of said money for personal benefit was violative of the fiduciary obligation owed to Anthony Carlo.

During the period of time when Robert Crystal was running the business and the business was under the control of both Robert Crystal and Nicholas Tarsia, and individual John Gloria was permitted to take an engine and generator without payment. I find that Mr. Gloria was a friend of Mr. Tarsia's and was placed at the business to protect the rights of Mr. Tarsia. No action by either Robert Crystal or Nicholas Tarsia was taken to recover the items or the value. I find that their action or inaction violate the fiduciary duties to both Revolution Marine and Sports Center LLC and to Anthony Carlo. Accordingly, I enter judgment against Robert Crystal and Nicholas Tarsia in the amount of $25,000, said money to be returned to the partnership.

Evidence produced by the defendants showed that the LLC owes vendors $98, 861.26. The LLC also owes a loan to Cash Advance in the sum of $23,000. I find that the plaintiffs breached fiduciary duties by conducting a liquidation sale and by taking inventory for themselves or relatives at deep discounts. The

Case 12-01590-DHS    Doc 6-2    Filed 03/04/13    Entered 03/04/13 13:54:18    Desc
Exhibit P-1    Page 24 of 26

plaintiffs, Nicholas Tarsia and Robert Crystal are personally responsible to the LLC and to the vendors and Cash Advance for the aforesaid amounts and I enter a judgment against them as such. I further find that Anthony Carlo is not personally responsible as he was evicted from the premises and not permitted to participate in the partnership during the aforesaid time.

From the testimony and records, it would appear that Mr. Al Rotelle loaned the partnership $50,000 at or near its beginning of business, $14,000 of that amount was repaid. Subsequent to Mr. Tarsia and Mr. Crystal taking control of the business, Mr. Rotelle was allowed to buy a boat at a deep discount. I find that his loan has been repaid in full by the partnership. I further find that any amount owed with that of the partnership and not by Mr. Daniel Carlo personally. I further find that the truck purchased from Mr. Rotelle by Mr. Carlo was for the use and benefit of Revolution Marine and that his payment and purchase was not unauthorized.

Mercury Marine has brought an action against the LLC for money and/or return of the engines and other goods which were on consignment at Revolution Marine. In view of the fact that Nicholas Tarsia and Robert Crystal were in charge of running/managing the business and, in fact, ended the business by creating Crystal Cove Marina, any monies owed to Mercury Marine are the responsibility of Nicholas Tarsia and Robert Crystal personally. I find that Anthony Carlo is not responsible in view of the restraint upon him participating in the business. I enter judgment accordingly.

Daniel Carlo's claim with the Labor Department, Wage and Hour, for wages due as a result of his employment with the LLC was joined with the arbitration by consent of the parties. The plaintiffs oppose the claim and the Wage and Hour action apparently stating that he was not an employee. In the Superior Court, all Verified Complaints, documents and testimony denied that he was a partner.

Accordingly, I enter judgment in favor of Daniel Carlo finding him to be an employee of Revolution Marine and Sports Center LLC and due his claimed wages of $43,000.

In May, June and July 2008, Daniel Carlo, a non-partner loaned $252,558.10 to the LLC. Because he was not a partner, said amount according to Mr. Frye, is a loan and not an investment. He also used personal credit cards to purchase inventory. Testimony was given that Nicholas Tarsia and Robert Crystal knew that he was loaning the money, and they, despite of being asked to do so, did not contribute money to the partnership.

Accordingly, judgment is entered against the LLC, Nicholas Tarsia and Robert Crystal in the amount of $292,558.10 in favor of Daniel Carlo.

It is my further finding that the monies invested with Pershing in the sum of $7,025 are to be returned to Revolution Marine and Sports Center LLC in view of Anthony Carlo's status as partner.

I also find that Nicholas Tarsia and Robert Crystal are solely responsible for the payment of all remaining obligations and debts of the partnership as their actions and inactions prevented the orderly winding up of the said partnership. I

enter judgment finding that Nicholas Tarsia and Robert Crystal violated their fiduciary duties to both their partnership and to Anthony Carlo, their partner.

The above findings are based upon the testimony of the parties and witnesses and the documents marked into evidence.

KENNETH R. PENTONY, ESQ.